# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-3464
_____

Anthony Knight

*Plaintiff - Appellant*

v.

Cambria Company, LLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 10, 2026
Filed: July 28, 2026
_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Anthony Knight sued his former employer, Cambria Company, LLC, after Cambria terminated his employment while he was on leave under the Family and Medical Leave Act ("FMLA"). Knight alleges that Cambria unlawfully

discriminated against him and interfered with his FMLA entitlements, but the district court[1] disagreed and granted summary judgment to Cambria. We affirm.

## I. Background

In 2021, Cambria hired Knight as a process engineering technician. Knight's main duty was to assist Cambria's only other process engineering technician, Mike Giese, in maintaining and improving production line functionality. Giese had been at Cambria for roughly a decade longer than Knight. Knight and Giese reported to the leader of Cambria's process technology area, Justin Wolfe. Wolfe, in turn, reported to Cambria's Chief Research Officer, Jon Grzeskowiak.

In late 2022, Knight's father passed away, and Knight began to struggle with depression. Seeing this, Wolfe suggested that Knight consider taking FMLA leave. *See* 29 U.S.C. § 2601 *et seq.* In February 2023, Knight requested and received approval to take FMLA leave until April 2023. In mid-March, about six weeks after Knight requested leave, Cambria terminated his employment. In a letter to Knight, Wolfe explained that Knight's "position ha[d] been eliminated."

Cambria provided Knight with a disclosure pursuant to the Older Workers Benefits Protection Act ("OWPBA"), *see* 29 U.S.C. § 621 *et seq.* The OWBPA disclosure stated that Cambria had selected Knight for "reduction" because he had a "shorter period of employment" than other employees. It also stated that a sixty-seven-year-old employee had also been selected for reduction. And it stated that both Knight and the other employee had the job title of "Plant Operations."

After Cambria terminated Knight, it "shifted" his workload to another department. Although Cambria had kept a job posting open since September 2022

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

for a "process engineering technician," Cambria never interviewed any candidates and closed the posting in April 2023 without hiring anyone.

Knight sued Cambria, alleging violations of the FMLA.[2]  During discovery, Cambria identified Grzeskowiak as the decisionmaker behind the elimination of Knight's position.  In November 2024, Grzeskowiak provided deposition testimony.  He explained that in late 2022 and early 2023, he and other "leaders in the plant" were "consistently looking at our head count and evaluating ways that we might be able to reduce it."  He explained that by the end of 2022, "our volumes were reducing and we were anticipating an even further reduction," and that by March 2023, Cambria did not need two process engineering technicians.  He added: "I remember discussing at the time that . . . we'd be able to get through the work that we needed to get done using . . . one person instead of two."  Grzeskowiak emphasized that these discussions were "person-to-person . . . in-person meetings."  Grzeskowiak also explained that the decision to terminate Knight instead of Giese, Cambria's other process engineering technician, was based "solely on seniority."

When asked whether he had known that Knight had requested FMLA leave, Grzeskowiak responded: "I don't think—I believe I did understand that at the time, that there was a Family Medical Leave Act request out there."  In a post-deposition errata sheet, Grzeskowiak would change that answer to: "while Mr. Knight was employed by Cambria[,] I did not know there was a Family Medical Leave Act request out there."  Later in his deposition, Grzeskowiak elaborated: "I did know that he had some attendance issues, yes.  I didn't understand it to be a leave, I don't believe."  He also added, "like I said, I don't believe that I knew at the time about the leave."

During Grzeskowiak's deposition, Knight's counsel showed him the OWBPA disclosure that Cambria had given Knight, which stated that Cambria had also

---

[2]Knight also claimed that Cambria violated the Minnesota Human Rights Act, *see* Minn. Stat. § 363A.01 *et seq.*, but that claim is not on appeal.

terminated a sixty-seven-year-old employee in the reduction. Grzeskowiak noted that he had first seen the OWBPA disclosure the morning of the deposition and that he was "not sure" whether Cambria terminated a sixty-seven-year-old employee at the same time as Knight. When asked whether there was "a 67-year-old let go from within your area of reporting," Grzeskowiak replied "I don't believe so," and then elaborated that there were "a handful of different management structures within [plant operations] . . . so could have been someone who had nothing to do with me." About two weeks after Grzeskowiak's deposition, Cambria's counsel notified Knight's counsel that the sixty-seven-year-old employee listed in the OWBPA disclosure had been a vice president who had reported to Grzeskowiak.

Giese, Wolfe, and Cambria's Chief HR Officer, Christine Phelps, also provided deposition testimony. Giese stated that Cambria "went from two process engineering technicians to one" because "there wasn't enough work to keep two process engineers busy full-time." Wolfe, similarly, stated that he had told Grzeskowiak in 2023, before Knight was terminated, that Cambria could complete its project workload with only one full-time process engineering technician.

Phelps testified that she was unaware of any "company mandate" or "directive" from "the top levels of management" in March 2023 to reduce employee headcount. She also testified that she required Cambria's management to document how they decided whom to terminate in a reduction in force. For example, she would require management to provide "performance-related documents," "[w]ork area documents," and documents indicating "whether or not we had work in the area." Other than the OWBPA disclosure and Wolfe's termination letter to Knight, Cambria has not identified any other documents from late 2022 or early 2023 that explain its reasons for terminating Knight.

Cambria moved for summary judgment, and the district court granted Cambria's motion. Knight appeals.

-4-

## II.  Discussion

We review the district court's grant of summary judgment *de novo*, "viewing the evidence in the light most favorable" to Knight and giving him "the benefit of all reasonable inferences."  *See Dallas v. Am. Gen. Life & Accident Ins. Co.*, 709 F.3d 734, 736 (8th Cir. 2013).  We should affirm if "there is no genuine dispute as to any material fact" and if Cambria is "is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  "There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict" for Knight.  *See Dick v. Dickson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (citation modified).

The FMLA entitles certain eligible employees to take leave from work.  *See* 29 U.S.C. § 2612(a)(1).  Further, it provides that employers may not "interfere with, restrain, or deny" this protected leave.  *See* § 2615(a)(1).  This prohibition enables "discrimination" claims and "entitlement" claims.  *See Burciaga v. Ravago Ams. LLC*, 791 F.3d 930, 934 (8th Cir. 2015).  Here, Knight brings both types of claims, but neither claim can survive summary judgment.

### A.  Discrimination Claim

We begin with Knight's discrimination claim.  A discrimination claim arises "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA."  *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012).[3]  To prevail on this claim, Knight must offer proof of Cambria's discriminatory intent.  *See Brown v. City of Jacksonville*, 711 F.3d 883, 891 (8th Cir. 2013).  "This proof may come from

---

[3]Knight labels his discrimination claim as a "retaliation claim."  We have previously used that label to refer to a different type of FMLA claim, one that arises when an employer "take[s] adverse action against [an] employee" for "oppos[ing] any practice made unlawful under the FMLA," *see Pulczinski*, 691 F.3d at 1006, which Knight does not allege here.  For clarity, therefore, we refer to Knight's claim as a discrimination claim, as *Pulczinski* advises us to do.  *See id.*

direct evidence or indirect evidence using the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973)). Because Knight presents no direct evidence of discrimination, we analyze his claim under the *McDonnell Douglas* framework.

To prove FMLA discrimination through the *McDonnell Douglas* framework, an employee must first "establish a prima facie case of retaliatory discrimination by showing that [he] exercised rights afforded by the [FMLA], that [he] suffered an adverse employment action, and that there was a causal connection between [his] exercise of rights and the adverse employment action." *See Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1161 (8th Cir. 2016) (citation modified). If the employee can establish this prima facie case, then "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* (citation modified). And if the employer can articulate such a reason, "the burden shifts back to the employee to demonstrate that the employer's proffered reason is pretextual." *Id.* (citation modified).[4]

Even assuming—without deciding—that Knight can establish a prima facie case, *see Winters v. Deere & Co.*, 63 F.4th 685, 690 (8th Cir. 2023), his claim still fails. Cambria has articulated a legitimate, nondiscriminatory reason for its actions: it terminated Knight because Grzeskowiak and other "leaders at the plant" were looking to reduce employee headcount; they did not need two process engineering technicians; and Giese was more senior than Knight. *See Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 716 (8th Cir. 2000) (noting that "a reduction-in-force for reducing costs and improving efficiency" is a "legitimate, non-discriminatory

---

[4]Knight suggests that we adopt the "mixed-motive" framework used in *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389-90 (5th Cir. 2013), which requires an employer to prove an affirmative defense if "retaliatory animus was a motivating factor in an adverse employment action." *See id.* Knight offers no reason or case law from our circuit to explain why we should apply this framework here. Even if we did so, it would not affect our analysis because Knight has not raised a genuine dispute that "retaliatory animus was a motivating factor" in his termination. *See id.*

reason for [a] discharge"); *Bright v. Standard Reg. Co.*, 66 F.3d 171, 173 (8th Cir. 1995) (describing "seniority in [a] position" as "an obviously legitimate, non-discriminatory basis to accomplish a reduction in force").

Knight, therefore, must demonstrate that Cambria's articulated reason for his termination is pretextual. Knight "must prove more than the prima facie case to show pretext, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." *See Chappell v. Bilco Co.*, 675 F.3d 1110, 1117 (8th Cir. 2012) (citation modified). Our focus "always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of" his FMLA leave. *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1337 (8th Cir. 1996). "It is not enough to *dis*[-]believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (citation modified).

Knight identifies two ways that he may show pretext. First, Knight may show that Cambria's explanation "is unworthy of credence because it has no basis in fact." *Cox v. First Nat'l Bank*, 792 F.3d 936, 939 (8th Cir. 2015). Although Knight cannot demonstrate pretext "simply by showing that the reason advanced by [Cambria] was false," *see Roxas v. Presentation Coll.*, 90 F.3d 310, 316 (8th Cir. 1996), "the factfinder's disbelief of [Cambria's] explanation *may*, together with the prima facie case, suffice to show intentional discrimination," *see Rothmeier*, 85 F.3d at 1336. Second, Knight may show that "a prohibited reason more likely motivated" Cambria to terminate him. *See Cox*, 792 F.3d at 939.

Here, however, no reasonable jury could believe Knight's "explanation of intentional discrimination." *See Reeves*, 530 U.S. at 147. As explained below, Knight cannot raise a genuine dispute as to pretext under either of his identified methods, and his efforts to discredit Cambria's evidence are meritless.

-7-

### i.

To start, the undisputed record establishes that Cambria's articulated reason for Knight's termination has a "basis in fact." *See Cox*, 792 F.3d at 939. Grzeskowiak explained that, by the end of 2022, he and other leaders at the plant were observing production slowdowns, predicting further slowdowns, and looking for ways to reduce their headcount. Giese and Wolfe have corroborated Grzeskowiak's testimony that, by March 2023, there was not enough work for two process engineering technicians. Grzeskowiak testified that Cambria terminated Knight instead of Giese because Giese was senior to Knight. And after Knight was terminated, Cambria never hired anyone to fill his role; instead, Cambria simply "shifted" his work to other departments.

Knight argues that Cambria had enough work to keep him employed full-time. He observes that until he went on leave in February 2023, he was working full-time, and frequently, overtime. But Knight's argument misses Cambria's central point: because of production slowdowns, Cambria could complete its workload whether it employed Knight full-time or not. *Cf. Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1166 (8th Cir. 1985) ("[T]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of . . . discrimination."). By Knight's own admission, Cambria simply "shifted" his workload to other employees after it terminated him. And Cambria never filled his position. The undisputed record shows that Cambria terminated Knight to reduce costs and improve efficiency—a legitimate, non-discriminatory reason. *See Buettner*, 216 F.3d at 716.

### ii.

Knight likewise has not presented a genuine dispute that "a prohibited reason more likely motivated" Cambria to terminate him. *See Cox*, 792 F.3d at 939. Knight attempts to undermine Cambria's explanation for his termination by pointing out that Cambria failed to document the reasons for his termination and that his

termination's timing coincided with his FMLA leave. But Knight does not present sufficient evidence to raise a genuine dispute whether Cambria's actual reason for terminating him was discrimination. *See Reeves*, 530 U.S. at 147.

Knight argues that Cambria's failure to document why it terminated him indicates that his termination was not "part of a legitimate reduction in force." Of course, Cambria has *some* documentation explaining his termination; Wolfe wrote Knight a letter explaining that Cambria had eliminated his position, and the OWBPA disclosure explained that Cambria selected Knight for "reduction" because of his lesser seniority. But Knight is correct that Cambria has not identified any documents from late 2022 or early 2023 that indicate any sort of production slowdown or plans to reduce employee headcount.

Nonetheless, "a federal court is not a super-personnel department with authority to review the wisdom or fairness of business judgments made by employers." *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018); *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) ("[A] lack of contemporaneous documentation, alone, is not evidence of pretext; the employee must also demonstrate why the absence of documentation matters."). Knight cites no case law to explain why Cambria's lack of documentation matters. Perhaps Knight's argument is that it violated Cambria's policies. But even then, "although an employer's violation of its own policies may be indicative of pretext, that is not always so." *See Winters*, 63 F.4th at 691 (citation modified). Knight must still "offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Id.* at 690. Without evidence that Cambria's "deficiency" was "related to unlawful discrimination," we are left to conclude that it fails to demonstrate pretext. *Cf. Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 795 (8th Cir. 2011).

Knight also argues that the timing of his termination, "just prior to [his] scheduled return," indicates that "the leave played a part in the termination." Although not dispositive, the time lapse between an employee's protected activity

and the employer's adverse action is an important factor when evaluating whether a [causal] connection has been established." *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir. 2005). But Knight relies on the sort of "mere coincidence of timing" that "is rarely sufficient to establish" a causal connection between FMLA leave and termination. *See Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014).

When evaluating whether timing indicates discrimination, "this Court looks to the date an employer knew of an employee's use (or planned use) of FMLA leave, not the date that leave ended." *Lissick v. Andersen Corp.*, 996 F.3d 876, 886-87 (8th Cir. 2021) (citation modified). At the latest, Cambria knew of Knight's planned use of FMLA leave by the time he requested it—six weeks before Cambria terminated him. "Although we have not drawn a definitive line, we have determined that a one-month or two-month lag is too long absent other evidence." *Ebersole*, 758 F.3d at 925. Here, the six-week lag between Knight's request for FMLA leave and his termination—especially given Cambria's ongoing production slowdown— "seriously detracts from any finding that [Knight's] termination was related to" his FMLA leave. *See Corkrean v. Drake Univ.*, 55 F.4th 623, 632 (8th Cir. 2022).

Knight observes that Cambria had no plan to eliminate his position prior to his FMLA leave. But a case built on temporal proximity "is undermined where the allegedly retaliatory motive coincides temporally with the non-retaliatory motive." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1001 (8th Cir. 2011). And here, Cambria's undisputed witness testimony reveals that Cambria's production slowdown coincided with Knight's FMLA leave. Further, "evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." *Corkrean*, 55 F.4th at 632. Here, Grzeskowiak testified that by late 2022—at least a couple of months before Knight requested FMLA leave—he was observing a production slowdown and was speaking with other plant leaders about reducing headcount. The timing of Knight's termination does not raise a genuine issue as to pretext.

Knight attempts to bolster his timing argument by observing that "all of the managers involved in the decision" to terminate him "were aware of [his] FMLA leave." Knight's observation does nothing to alter our analysis, which (see above) already considers "the date an employer knew of an employee's use (or planned use) of FMLA leave." *See Lissick*, 996 F.3d at 886-87. In any event, "[m]ere knowledge of a [protected ground] cannot be sufficient to show pretext." *See Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1073 (8th Cir. 1998).

Because Knight's evidence fails to raise a genuine dispute that "discriminatory animus lies behind" Cambria's decision to fire him, he cannot show pretext. *See Roxas*, 90 F.3d at 316.

### iii.

Knight then attempts to discredit Cambria's evidence. But he fails to raise a genuine dispute regarding its credibility or reliability.

First, Knight attacks Grzeskowiak's credibility. Grzeskowiak's errata sheet revised a passage of his testimony to read: "while Mr. Knight was employed by Cambria[,] I did not know there was a Family Medical Leave Act request out there." Knight argues that this revision was a substantive change in testimony and that it therefore impugns Grzeskowiak's credibility. We disagree. Grzeskowiak's errata sheet merely clarified his testimony. Grzeskowiak's original testimony—"I don't think—I believe I did understand that at the time, that there was a Family Medical Leave Act request out there"—is unclear; Grzeskowiak could have meant either that he did *not* believe he had understood that Knight was on FMLA leave or that he *did* believe this. And later in his testimony, Grzeskowiak elaborated, "I did know that he had some attendance issues, yes. I didn't understand it to be a leave, I don't believe," and added, "like I said, I don't believe that I knew at the time about the leave." These later passages indicate that Grzeskowiak's testimony was that he did not believe that he had understood that Knight had been on FMLA leave. Setting aside when a substantive change in testimony could raise a genuine dispute as to a

-11-

witness's credibility, this mere clarification does not.[5]  *See Taylor v. Cottrell, Inc.*, 795 F.3d 813, 818 (8th Cir. 2015) ("[A]n affidavit may be submitted to clarify ambiguities or confusion in deposition testimony.").

Second, Knight attacks Grzeskowiak's memory.  At Grzeskowiak's deposition, Knight's counsel showed him the OWBPA disclosure that stated that Cambria had terminated a sixty-seven-year-old employee alongside Knight.  Knight emphasizes that Grzeskowiak, when testifying, could not remember who that employee was, even though the employee was a vice president who reported to him. Knight concludes that Grzeskowiak (and Cambria) are neither credible nor reliable. Again, we disagree.  Grzeskowiak first saw the OWBPA disclosure on the morning of his deposition, over a year and a half after Knight's termination.  Grzeskowiak admitted that he was "not sure" when asked if Cambria had terminated a sixty-seven-year-old employee alongside Knight.  And within two weeks after the deposition, Cambria's counsel informed Knight's counsel who that employee was.  Further, the relevant portions of Grzeskowiak's testimony—that is, the portions that explain why Cambria terminated Knight—are corroborated by other evidence.  Giese and Wolfe testified that Cambria did not have enough workload for two process engineering technicians; Wolfe testified that he and Grzeskowiak talked about this workload issue in 2023; the OWBPA disclosure states that Knight was selected for "reduction" because he had a "shorter period of employment"; Wolfe's letter to Knight states that Cambria terminated him because it eliminated his position; and the parties do not dispute that, after Knight's termination, Cambria simply "shifted" his work to other departments and never back-filled his role.  Knight's attack on Grzeskowiak's memory does not raise a genuine dispute as to his credibility or reliability.  *See Johnson v. Midwest Div. - RBH, LLC*, 88 F.4th 731, 736 (8th Cir. 2023) ("To create a genuine dispute of fact, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ." (citation modified)).  Even if it did, the undisputed record would still support summary judgment.

---

[5]Knight also argues that Grzeskowiak's errata sheet was untimely.  Even assuming it was, Knight does not explain why that affects Grzeskowiak's credibility.

Third, Knight argues that Grzeskowiak is not credible because Phelps testified that she was unaware of any "company mandate" or directives from "the top levels of management" in March 2023 to reduce employee headcount. But Knight perceives a conflict where there is none. Grzeskowiak testified solely that he and other leaders at the plant were "consistently looking at [their] head count and evaluating ways that [they] might be able to reduce it," not that they were implementing or imposing any "mandate[s]" or "directives" to reduce headcount. Phelps's testimony does not raise a genuine dispute as to Grzeskowiak's credibility.

Finally, Knight argues that "Cambria's failure to comply with the OWBPA is evidence of its intentional obfuscation of the facts." Knight alleges that Cambria's OWBPA disclosure did not identify the "decisional unit" and mischaracterized his job title as "Plant Operations." But although Knight asserts that these alleged errors affect Cambria's credibility, he does not explain why, opting instead only to describe the alleged errors. Knight, therefore, offers no case law to support this argument. Nor does Knight explain why the OWBPA disclosure undermines Cambria's witnesses' undisputed testimony that establishes that Cambria terminated him for a legitimate, non-discriminatory reason.

Knight's attacks on Cambria's evidence fail to save his discrimination claim.

## B. Entitlement Claim

We now turn to Knight's entitlement claim. "An employee can prevail under an [entitlement] theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). Thus, Knight must show that: "(1) he was entitled to a benefit under the FMLA, (2) [his] employer interfered with that entitlement, and (3) the reason for the denial of the benefit was connected to his FMLA leave." *See Black v. Swift Pork Co.*, 113 F.4th 1028, 1031 (8th Cir. 2024) (citation modified). Here, the first two elements are undisputed; Cambria terminated Knight while he was taking approved FMLA leave, and "[e]very discharge of an employee while he is

-13-

taking FMLA leave interferes with an employee's FMLA rights," *see Stallings*, 447 F.3d at 1050-51 (citation modified). Our analysis, therefore, focuses on whether Cambria's reason for terminating Knight was "connected to" his FMLA leave.

"An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than [he] did before taking the leave." *Estrada v. Cypress Semiconductor (Minnesota) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010). Therefore, Cambria will not be liable if it "can prove it would have made the same decision" had Knight not taken FMLA leave. *See id.* Cambria has done so.

The undisputed record establishes that Knight was terminated because Grzeskowiak and other "leaders at the plant" were looking to reduce employee headcount; they did not need two process engineering technicians; and Giese was senior to Knight. As discussed above in Section II(A)(i), there is plenty of evidence to support this rationale. Although Knight is correct that he does not bear the burden of disproving Cambria's defense at summary judgment, there must be a genuine dispute of material fact for Knight to survive summary judgment, *see* Fed. R. Civ. P. 56(a). But Knight has not raised any such dispute, and we see none.

Knight raises virtually identical arguments to support his entitlement claim as he does to support his discrimination claim. First, he argues that prior to his termination, he was working overtime, and that after his termination, Cambria simply "shifted" his workload to another department. Knight offers no case law to indicate why this argument supports his entitlement claim. For the reasons explained above in Section II(A)(i), this argument fails to raise a genuine dispute that his termination was connected to his FMLA leave.

Second, Knight argues that Cambria's failure to document its decision-making behind his termination suggests that his termination was connected to his FMLA leave. Knight asserts that Cambria "would normally be expected" to document its decision-making "in a legitimate reduction in force." But Knight offers no case law or reasoning to explain *why* Cambria "would normally be expected" to

do so.  Nor does Knight offer any case law or reasoning to explain *why* Cambria's lack of documentation—even if contrary to what "would normally be expected"—raises a genuine dispute as to whether Knight's termination was connected to his FMLA leave.  Ordinarily, "[a]n employer can certainly choose how to run its business, including not to follow its own personnel policies regarding termination, as long as it does not unlawfully [act] in doing so." *See Winters*, 63 F.4th at 691.  We need not determine when an employer's failure to document the reasons for an employee's termination raises a genuine dispute as to whether the termination was connected to his FMLA leave.  We conclude only that Knight has not sufficiently developed that argument here. *See United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001).

Third, Knight argues that his termination's timing suggests that his termination was connected to his FMLA leave.  Knight, yet again, offers no case law to support this argument.  And it cannot be that any employee terminated while on FMLA leave obtains a free pass through summary judgment on an FMLA entitlement claim.  We have held that "the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA." *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005).  For example, if "an employer goes out of business while an employee is on FMLA leave," it "would be preposterous" to hold the employer strictly liable for terminating that employee. *Id.*  That reasoning seems applicable here, where the undisputed record shows that Cambria experienced a production slowdown during Knight's FMLA leave and no longer needed two process engineering technicians.  In light of these undisputed facts, the six-week gap between Knight's request for FMLA leave and his termination, alone, does not raise a genuine dispute that his termination was connected to his FMLA leave. *Cf. Corkrean*, 55 F.4th at 632.

Finally, Knight raises the same attacks against Cambria's evidence that we rejected above in Section II(A)(iii).  For the reasons in that section, we reject them here as well.

Without further arguments or evidence from Knight, we are left to agree with the district court that Knight's entitlement claim fails.

### III.  Conclusion

For the foregoing reasons, we affirm.

_____